UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,.   Case No. 5:14-cr-00621-JLS-1
.
          Plaintiff,     .
.   U.S. Courthouse
     v.          .   601 Market Street
.   Philadelphia, PA 19106
GLEN JOSEPH,             .
.
          Defendant.     .
.   January 9, 2017
. . . . . . . . . . . ..   1:37 p.m.

TRANSCRIPT OF MOTION TO DISMISS
BEFORE HONORABLE JEFFREY L. SCHMEHL
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:      JOSEPH A. LABAR
UNITED STATES ATTORNEY'S OFFICE
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476
(215) 861-8516
Email: joseph.labar@usdoj.gov


For Glen Joseph:         PETER DAVID MAYNARD
530 Walnut Street
Reading, PA 19601-3419
(610) 375-9733
(610) 375-8587 FAX
Email: pdm530@aol.com


Audio Operator:          MICHAEL COSGROVE

TRANSCRIBED BY:          ASC Services, LLC.
1304 Concourse Drive, Suite 120
Linthicum Heights, MD. 21090
(410) 694-9333


Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

<u>**I N D E X**</u>

<u>**PAGE**</u>

<u>**WITNESS FOR THE GOVERNMENT**</u>

GLEN JOSEPH

   Direct Examination by Mr. Maynard              4

   Cross-examination by Mr. Labar        5

| <u>**EXHIBITS**</u> | | <u>**ID.**</u> | <u>**EVD.**</u> |
|---|---|---|---|
| Defendant's 1 | 5-page letter<br>Written by Mr. Joseph | 17 | 17 |

1            THE COURT:  Good afternoon, everyone.  Everyone may

2    be seated.

3            MR. LABAR:  Good afternoon, Your Honor.

4            THE COURT:  We are here today in the case of the

5    United States of America v. Glen Joseph, Number 621 of 2014.

6    Mr. Joseph is here being represented by his counsel Pete David

7    Maynard, Esquire.  The government is here represented by

8    Assistant U.S. Attorney Joseph Labar.

9            MR. LABAR:  Sir.

10           THE COURT:  And the Court has scheduled argument on

11   the defendant's motion to dismiss and in fact any and all other

12   motions that need to be decided before a trial is scheduled in

13   this case.

14           So Mr. Maynard, you have the floor.

15           MR. MAYNARD:  May it please the Court, Your Honor, in

16   reviewing the motion with Mr. Joseph, he indicated there were

17   facts which are not included in my position and wanted them

18   included in that motion.  Would the Court give me leave to have

19   Mr. Joseph testify?

20           THE COURT:  How long do you think this will take?

21           MR. JOSEPH:  About 15 minutes?

22           MR. MAYNARD:  About 10 to 15 minutes, Your Honor.

23           THE COURT:  Well, you know you'll be subject to

24   cross-examination if you testify, so --

25           MR. JOSEPH:  That's fine.

1          THE COURT:  What's that?

2          MR. JOSEPH:  Yeah, that's fine.

3          THE COURT:  All right.  You may call your client and

4    have the clerk swear him in.

5          CLERK:  Would you please raise your right hand?

6               GLEN JOSEPH, DEFENSE WITNESS, SWORN

7          CLERK:  Please state your full name for the record.

8          THE WITNESS:  Glen Joseph.

9          THE COURT:  Mr. Maynard, you have the floor.

10         MR. MAYNARD:  Thank you, Your Honor.

11                      DIRECT EXAMINATION

12   BY MR. MAYNARD:

13   Q    Mr. Joseph, you received a copy of the motion to dismiss

14   filed on this matter?

15   A    Yes.

16   Q    Okay.  You've indicated to me that there are additional

17   matters that you wish the Court to be aware of with respect to

18   the motion to dismiss?

19   A    Yes.

20   Q    There are additional facts that you wished included in the

21   motion.

22   A    Yes.

23   Q    Would you tell the Court what those facts are briefly?

24   A    The facts were they were already given to the Judge when I

25   sent him a motion for a new counsel, so when I had Kathleen

1  Gaughan as my attorney.  They were attached notes.

2  Q    Do you know approximately when that would be?

3  A    Right around May 27th.

4  Q    May 27th of this year?

5  A    Of last year, '16.

6  Q    Thank you.  Are there additional facts that you wish

7  included in the motion?

8  A    No.  This should do it.

9  Q    So that I'm clear and so that the record is clear you

10 forwarded a letter to the Court May 27, 2016?

11 A    Correct.

12 Q    You included the facts in there, statements in that

13 Pleading or letter where you would ask the Court to consider

14 the -- in addition to the motion to dismiss?

15 A    Correct.

16 Q    Is there anything else you wish to add?

17 A    There is not.

18        MR. MAYNARD:  I have nothing further, Your Honor.

19        THE COURT:  Mr. Labar, your witness.

20                    CROSS-EXAMINATION

21 BY MR. LABAR:

22 Q    Good afternoon, sir.  My name is Joseph Labar, and I'm the

23 Assistant U.S. Attorney here.  Do you have a copy of the letter

24 that you want to include?  Can I take a look at it?

25 A    You can take a look at it, sure.

1  Q    All right.  I'll give it right back to you.  When did you

2  send this letter to His Honor?

3  A    The 27th of May -- right around the 27th of May.

4  Q    Okay.  Can you tell us just briefly -- if I could have

5  just a moment to read this (indiscernible)?

6         THE COURT:  Why don't we have copies made?

7  Everybody's working off the same document.  Chris, can you make

8  copies?  Make a copy for Mr. Maynard, a copy for Mr. Labar and

9  a copy for the Court.

10         MR. LABAR:  Your Honor, for the record,

11  (indiscernible) handed to me by the defendant.  It's a total of

12  five pages of legal size paper with handwriting on one side of

13  the page, and they are numbered.

14         CLERK:  Judge?

15         THE COURT:  Oh, you can't get out?  Can you get him

16  out and let him back in?

17         So just for the record, Mr. Maynard, your motion to

18  dismiss is based on what legal theory?

19         MR. MAYNARD:  As I understood it from Mr. Joseph, the

20  intent was not present with respect to the threats that were

21  maintained on the Facebook page.  Mr. Joseph is of the -- has

22  indicated that there are additional facts.  Unfortunately, I

23  don't have a copy of his letter either, but he believes those

24  facts also impact the motion to dismiss.  The main argument,

25  and as I understood it from Mr. Joseph was intent.

1              THE COURT:  Right.  The argument was that, the way I

2       understand it and you can correct me if I'm wrong, that the

3       statements weren't intended as threats but they were intended

4       as a warning of the microwave surveillance?

5              MR. MAYNARD:  Not an attempt -- I beg your pardon.

6       Not an in an attempt -- not an intent to cause fear in others

7       but to draw attention to the microwave surveillance Operation

8       Sleepwalk, as Mr. Joseph refers to it.

9              THE WITNESS:  What I'm going to read if I can talk?

10      What I'm going to read is basically names and possible

11      reference that you can subpoena and you can question these

12      people under oath and get to the bottom of what you're involved

13      in.

14             THE COURT:  All right.  That may be for a trial, not

15      for a motion to dismiss.

16             THE WITNESS:  Okay.  Well, can we get at least --

17      read it and get it in our record as --

18             THE COURT:  What, the whole letter?

19             THE WITNESS:  It's up to you.  You tell me.  I mean,

20      I --

21             THE COURT:  No, we're going to have the letter

22      marked.  We're not going to have you just sit here and read the

23      letter.  We all can read.  But if you want to point out

24      highlights to us, then, you know, that's, you know, that's

25      another thing.

1  BY MR. LABAR:

2  Q    Mr. Joseph, is it -- and maybe we can just cut to the

3  chase -- is it correct what your attorney just said that you

4  put these things on the Facebook page?  For what purpose?  Why

5  did you put them on there?

6  A    My intent is to draw as much attention to this situation

7  as possible period.  And that I believe I did so.

8  Q    Do you agree that you put those things on the Facebook

9  page?  You're not denying that, correct?

10 A    Absolutely.

11 Q    Well, I guess, Judge, I have no further questions.  I

12 want to see the letter.

13        THE COURT:  Well, I don't really have the Facebook

14 posts in front of me.  That's part of the government's record.

15  So but my understanding is the posts were threats.  They

16 didn't -- wasn't anything in the bottom of the post that said

17 this is to bring attention to Operation Sleepwalk.

18        THE WITNESS:  I read that in court.

19        THE COURT:  Right, but how is a person who's

20 receiving the threats supposed to know it's not a threat?

21        THE WITNESS:  I think when I read this, how the FBI

22 handled the situation with George Crouch (phonetic) and

23 Spagnaletti (phonetic), I think you'll have a very good idea.

24 That's why I think it's important that I read it to get it on

25 record so that you can hear it and say, wait a minute here we

1    need to do something.

2    BY MR. LABAR:

3    Q    Well, you -- you read the indictment against you, right?

4    A    I did, yeah.

5    Q    Okay.  And what we're talking about is Facebook postings.

6     That's the stuff that's in the indictment, right?

7    A    Right.

8    Q    So we're all talking about the same thing here.  and do I

9    understand it correctly that what you would like to have happen

10   today is simply that His Honor would perhaps take your motion,

11   consider it in one -- and to consider this five-page letter in

12   addition to what you've already presented?

13   A    Well, there are some things that just aren't -- I mean,

14   here's a problem what I have with this motion.  The defendant

15   believes to contends -- I', sorry.  The defendant contends and

16   believes his actions --

17             THE COURT:  Where are you?  What number so we can all

18   follow along?

19             THE WITNESS:  Number eight.

20             THE COURT:  Number eight, all right.

21             THE WITNESS:  Yeah, I think (indiscernible).

22             THE COURT:  That looks like eight.

23             THE WITNESS:  Okay.  There's another one.  Go back,

24   Your Honor, I'm sorry.  Go back to number seven.  "Defendant's

25   concern regarding microwave surveillance of his thoughts and

1   actions," and that sounds like something off the wall to me.  I
2   already read in court our last court date that I never
3   contended my thoughts and actions were being controlled by
4   microwave technology or anything else.  And I read that in
5   court last time.

6           I believe the letters, the pages you're going to read
7   that you -- you're going to be able to -- no, that's not what
8   he contended.  He did something and he did it for that reason.

9           And that's all I'm saying.  I mean, you keeping me in
10  here 27 months for what?  What's the purpose of it?  I mean,
11  really, what's the purpose?  You need to clean up -- I'm not --
12  I say you I mean the FBI and NSA.

13          MR. LABAR:  No offense taken.

14          THE WITNESS:  Okay.  Needs to clean up their act.  I
15  don't need to -- I did what I did.  I did it for a reason and
16  now I'm done with it.  Keeping me here over, you know, for 27
17  months is just -- it's unacceptable.

18          MR. LABAR:  But let me just ask you --

19          THE COURT:  We're obviously not trying to keep you.
20  At least I'm not trying to keep you here.  I'm trying to bring
21  this case to trial.

22          THE WITNESS:  And I appreciate it.

23          THE COURT:  All right.  But let me just ask this.
24  But you did go to trial in Lehigh County?  Who were the victims
25  there?

1          MR. LABAR:  Your Honor, my recollection of the Lehigh

2   County case that included (indiscernible).

3          THE WITNESS:  Yeah, that was after --

4          THE COURT:  So these are totally different victims,

5   though, right?

6          MR. LABAR:  Totally different victims.

7          THE COURT:  Right.

8          THE WITNESS:  It's all from the same (indiscernible).

9          THE COURT:  Right.

10          THE WITNESS:  And from the same -- and he --

11          THE COURT:  So he threatened a judge, a person, an

12   FBI agent and the President so they tried him in Lehigh for the

13   Judge and the person and we're trying --

14          THE WITNESS:  Now they want to --

15          THE COURT:  -- him again for the FBI agent and the

16   President?

17          MR. LABAR:  I'm not sure it's the same set of

18   threats, to be honest with you, Judge.

19          THE WITNESS:  It's all from the same incident is what

20   I'm trying to say.

21   BY MR. LABAR:

22   Q    When you say incident you mean the microwave incident?

23   A    Yeah.

24   Q    Okay.  So were the threats in Lehigh, were they posted at

25   a different page or with a different (indiscernible)?

1   A    They possibly were, yes.

2   Q    Okay.  So we're talking about a separate set of threats

3   over here with the FBI, the guy you thought was an FBI agent

4   and then over here the Lehigh folks, correct, two different

5   sets of prints (ph)?

6   A    Umm, yeah, but it was all from the same incident.  And all

7   around the statements --

8                THE COURT:  All right.  So the microwaves.

9                THE WITNESS:  -- around the same timeframe.

10                THE COURT:  We actually interrupted Mr. Joseph or you

11   interrupted him.

12                MR. LABAR:  I apologize.

13                THE COURT:  Because I think what he was going to say

14   is please refer to number seven.  Do you have that in front of

15   you?

16                MR. LABAR:  Yes.

17                THE COURT:  Okay.  And you said it wasn't really

18   regarding microwave surveillance of your thoughts and actions.

19    It was something else.

20                THE WITNESS:  It was an (indiscernible) specific

21   event.  It was a specific event.

22                THE COURT:  All right.  Well what event was that?

23   let's make it clear now.

24                THE WITNESS:  I will read it as soon as I get that --

25   the paper back (indiscernible) and it will clear everything up.

1    And that's really all I have to say about the situation.  I

2   mean, I did it and I threatened this person, yeah.  And I chose

3   to draw as much attention to the situation as possible.  When I

4   get out, everything that happened down here that's also going

5   to be posted.  That's your reputation.  That's not me

6   embarrassing anybody.  That's how everybody handled the case

7   and they're not dumb.

8   BY MR. LABAR:

9   Q    Well, for purposes of today's hearing, you'd like the

10   Court to simply review this letter, correct?

11   A    Sure.

12   Q    And then the Court make the Court's decision right?

13   A    Sure.  The Court had the information since I've been, like

14   I said, the 27th and then rule on it however you want to.

15   Let's get this situation over.

16             THE COURT:  Well, I had the information but it was

17   never in the form of a motion.

18             THE WITNESS:  It was.  It was attached to a motion.

19             THE COURT:  But the motion was withdrawn by counsel.

20             THE WITNESS:  Yeah.

21             THE COURT:  All right.  Well, you and your attorney

22   will have a discussion and what if your attorney advises you

23   that you -- that even all of this may be true it's not

24   technically a viable defense to a criminal charge or to what

25   you did?

1          THE WITNESS:  I told you what I did and I'm guilty.

2     (Indiscernible).

3          THE COURT:  Well, then maybe you and your attorney

4     should explore you pleading guilty and seeing what the

5     government would offer you in terms of a sentence and maybe you

6     can get out.

7          THE WITNESS:  Well, I personally would like to take

8     this in front of a jury just to let the people see how far you

9     would let something like this go without taking action upon

10    yourself and do something about it.

11         THE COURT:  You understand that could be detrimental

12    to you?

13         THE WITNESS:  Excuse me?

14         THE COURT:  That could be detrimental to you because

15    by taking it to a jury instead of pleading guilty you are

16    depriving yourself of certain advantages under the sentencing

17    guidelines.  You could be triggering certain disadvantages

18    under the sentencing guidelines.  And, you know, your attorney

19    is an experienced attorney who's been in federal court before

20    and he can explain those things to you.

21         THE WITNESS:  Well, Judge, you said at one point --

22         THE COURT:  I can't get involved.

23         THE WITNESS:  Okay.  You said -- I understand that.

24    You said at one point that you would let me -- Kathleen

25    actually said it in court that you wouldn't let me pursue any

1   defense I wanted, and the defense I wanted to put on was trying

2   to draw as much attention to this situation as possible.  And

3   you were going to allows that in effect.

4          THE COURT:  Well --

5          THE WITNESS:  Now, that's on record, so you can't

6   fault me on --

7          THE COURT:  Well, I'm not -- I'm not saying it isn't.

8    I will always allow a defendant to pursue any defense they

9   want to.  I can't force anybody to plead guilty.

10          THE WITNESS:  Okay.  Well, that's the -- that's how I

11   want to pursue this.  If you, being the part of the American

12   government, want to allow something like this to go to trial,

13   that's going to be your reputation.  That's not my reputation.

14    If you can't judge between good and evil, that's on you.  If

15   you want to let this go on, that's on you.

16          THE COURT:  Hey, I'm the referee.  It's not my

17   decision whether you're guilty or not guilty.  That's --

18          THE WITNESS:  That's not (indiscernible).

19          THE COURT:  -- for a jury.  That's for a jury to

20   determine.  He's prosecuting you.  He's defending you.  I make

21   the call on evidentiary issues, what comes in, what goes out.

22   I charge a jury.  I make sure they decide the case under the

23   law and then they decide whether you're guilty or not guilty,

24   not me.

25          MR. LABAR:  Your Honor, my understanding is that Mr.

1   Joseph won't be -- through his counsel will mark that letter as

2   an exhibit to be considered by the Court.  If that being the

3   case I have no other questions.

4           THE COURT:  Okay.  Well, at this time you have no

5   other questions.  Well, hopefully once we get back here, and I

6   don't know if it was the format or whatever is giving him

7   problems copying this, but once we get back here then you'll

8   get your copy back and we'll all get copies and then you can

9   say what you have to say.  And then if Mr. Labar has any

10  additional questions he can ask them at that time.  If not,

11  we'll see where we go from there.

12          If there's anything else you want to say about your

13  motion, you can also say that.

14          THE WITNESS:  I'm fine, thank you.

15          MR. MAYNARD:  Perhaps if I could address the

16  evidentiary issue with respect to Operation Sleepwalk.  You've

17  indicated you wish to introduce evidence concerning that at the

18  time of trial?

19  A    This will be fine with right here.

20  Q    Okay.

21          THE COURT:  Who need a copy here?  You do.  I need

22  one.  He needs one.  Define Operation Sleepwalk for the Court?

23          THE WITNESS:  Define it?  I believe that the --

24          THE COURT:  Or explain it, whatever -- whatever.  We

25  will move -- we will have his letter marked as Exhibit 1 and it

1    will be part of the Court record from this hearing.

2              (Defendant's Exhibit 1 marked for identification and

3    moved into evidence)

4              (Pause at 2:26 p.m.)

5              (Resume at 2:27 p.m.)

6              THE COURT:  All right.  Do you say you wanted to

7    explain Operation Sleepwalk?

8              THE WITNESS:  I think it's self-explanatory.  I don't

9    see what that has to do -- there was no threat posed

10   (indiscernible).

11   BY MR. MAYNARD:

12   Q    I'm sorry?

13   A    There was no threat posted on Operation Sleepwalk.

14   Q    Then perhaps I misunderstood you then, but I --

15   A    You did.

16   Q    -- I thought that was more of the -- what you wanted to

17   produce at the time of trial.

18   A    Oh, no, right here.  this is all.  This was all posted,

19   all right?

20   Q    Right.

21   A    The information and then there was no threats on Operation

22   Sleepwalk and I believe that actually explains itself, which

23   they are -- somebody already took down.  Do I really need to

24   read this in Court right now?

25             THE COURT:  No, you do not need to read it.  I said

1  that you don't need to read it.

2  BY MR. MAYNARD:

3  Q    And this is the additional information you would like for

4  the Court to consider?

5  A    Yes, that's the people in it that can be subpoenaed along

6  -- along with their medical records and also along with phone

7  records.  As far as Spagnaletti (ph) if he was an agent, or if

8  he wasn't, however you guys want to play it, that's up to you.

9   You could actually subpoena people and see what -- and put

10  them on, swear them in and put them in under oath and see what

11  they have to say.

12  Q    Is there anything additional you'd like to add?

13  A    (Indiscernible) sir.  Pardon me, sir?

14  Q    Is there anything additional you'd like to add?

15  A    I'm done.

16         MR. MAYNARD:  Thank you.  I have nothing further,

17  Your Honor.

18         THE COURT:  Anything further, Mr. Labar?

19         MR. LABAR:  No, sir.  No, sir.

20         THE COURT:  All right.  I'm going to let you keep

21  that because we'll use this copy as Exhibit 1 so that you get -

22  - I don't want you to give up your letter because I think you

23  should have that.  And I'll take the matter under advisement

24  and then I'll render a decision.

25         MR. LABAR:  Thank you, Your Honor.

```
 1              THE COURT:  All right?  Thank you all, Court
 2    adjourned.
 3              COURTROOM DEPUTY:  All rise.
 4              (Hearing adjourned at 2:29 p.m.)
 5                          *  *  *  *  *
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
```

20

1

**C E R T I F I C A T I O N**

We, ASC Services LLC, court approved transcribers,
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter, and to the best of our ability.


_____


_____


DATE:  February 5, 2018